# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:

LAS VEGAS CASINO LINES, LLC,

Case No. 6:09-bk-03690-ABB

Chapter 7

     Debtor.

_____/

LAS VEGAS CASINO LINES, LLC,

     Plaintiff,

Adv. Pro. No. 6:09-ap-00910-ABB

v.

ROBERT ABBOTT,

     Defendant.

_____/

## MEMORANDUM OPINION

This matter came before the Court on the Amended Complaint (Doc. No. 11) filed by the Plaintiff/Debtor Las Vegas Casino Lines, LLC ("Plaintiff") against the Defendant Robert Abbott seeking turnover of funds Defendant allegedly stole while aboard Plaintiff's gambling cruise ship. The final evidentiary hearing was held on March 7, 2011 at which a representative of the Plaintiff, the Defendant, and their respective counsel appeared.

Judgment is due to be entered in favor of Defendant and against Plaintiff for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

Plaintiff operated a gambling cruise ship known as Liquid Vegas that took passengers from Port Canaveral, Florida, into waters beyond the three-mile territorial limits of Florida for the purpose of allowing the passengers to gamble without violating Florida statutory law. This type of voyage is referred to as a "cruise-to-nowhere."[1]

Defendant is a NASA employee. He was a frequent passenger on Plaintiff's ship and gambled on it many times, mainly using the ship's slot machines. A player needed to obtain a gambling card from Plaintiff in order to use the slot machines. Plaintiff would issue a gambling card to each player with the player's name appearing on the face of the card. Each card stated a balance representing the amount of money the named player had to gamble. It was Plaintiff's policy to issue only one gambling card to a player, but Plaintiff often issued additional cards to players who boarded the ship and had misplaced or forgotten their card. Plaintiff generated income through gambling, and it issued additional cards to players to facilitate gambling.

Plaintiff issued between five and seven gambling cards to Defendant. At least two of the gambling cards Plaintiff issued to Defendant incorrectly stated Defendant's gambling balance as $99,999,999.99.[2] Defendant returned one of these cards to Plaintiff; but, a few months later, when Defendant was issued a second card that erroneously stated his gambling balance as $99,999,999.99, he kept it.

---

[1] Florida outlaws gambling within the state's boundaries, which extend three miles from the coastline. Gambling on a cruise-to-nowhere takes place only after the ship travels outside the three-mile limit.

[2] Defendant had not put $99,999,999.99 on the gambling cards, and Plaintiff had not extended any credit to Defendant to gamble on the ship. Plaintiff's computers erroneously placed $99,999,999.99 on these gambling cards.

Defendant gambled with several cards, including the card that incorrectly had a $99,999,999.99 balance; he transferred money between gambling cards; he put money on cards; he cashed out some portions of card balances; he purchased gambling tokens; and he tipped Plaintiff's employees with cash and gambling tokens. All of these activities occurred while the ship was in waters beyond Florida's three-mile territorial limit.

On April 28, 2009, Plaintiff's employees prevented Defendant from leaving the ship's disembarkation area at Port Canaveral and took him to the office of Mr. Giles Malone, Plaintiff's Managing Partner. Defendant was inside Malone's office for approximately two hours. Brevard County Sheriff's deputies stood outside the office while Malone and three others in Plaintiff's employ accused Defendant of using gambling cards to commit theft on the ship.

Defendant felt remorseful and admitted some wrongdoing. He knew he had improperly used gambling cards and might have taken more money off the ship than he should have, but he thought Plaintiff's assertion that he had stolen $70,000.00 was outrageous. He felt threatened by the presence of the deputies and by Plaintiff's employees' references to the harm this could do to his career.

Defendant signed a written agreement to pay Plaintiff $70,000.00 in order to avoid being arrested or fired.[3] He and Malone left the office and went to Defendant's home, where Defendant gave Malone $15,100.00 in cash, a $9,900.00 check, and title to a car.[4] Defendant stopped payment on the check the next day.

Defendant denies he owes Plaintiff any money. He correctly asserts all of the alleged theft occurred more than three miles off the shore of Florida, outside of Florida's

---

[3] Pl's Ex. 2.

[4] Pl's Ex. 3.

territorial waters. He admits he wrongfully took $15,000.00 from Plaintiff; he contends he satisfied that debt when he paid Plaintiff $15,000.000 and gave Plaintiff title to a car on April 28, 2009. Defendant argues the agreement he signed in Malone's office is unenforceable because it is the product of extortion and lacks consideration by Plaintiff.

Plaintiff asserts it is owed more than $86,000.00 from Defendant.[5] Plaintiff did not establish it suffered damages of $86,000.00. Ship records reflect Defendant's cash withdrawals totaled $34,000.00.[6] No records establish how much of the $34,000.00 was redeposited on a gambling card or used to buy gambling tokens. No records establish how much of the $34,000.00 was money won by Defendant. Defendant admits he wrongfully took $15,000.00 from Plaintiff; he repaid that amount in cash at his home on April 28, 2009.

Judgment is due to be entered in favor of Defendant and against Plaintiff on three separate and distinct grounds:

> (i)      Plaintiff failed to plead or establish a cognizable cause of action in Count I of its Amended Complaint. Plaintiff refers to "turnover" in Count I with no legal citation or support. Plaintiff, based upon statements made in open Court, apparently based Count I upon Section 542 of the Bankruptcy Code. Turnover pursuant to Section 542 is not an available cause of action to resolve disputed property rights. The parties dispute whether Defendant owes Plaintiff any money. Section 542 does not provide an available remedy to Plaintiff.

---

[5] Plaintiff's damages assertions are inconsistent. It, in Count I of the Amended Complaint, pled it is owed $55,000.00, but in Count II it pled it suffered damages of $80,000.00. It, at trial, asserted it suffered damages of $86,000.00

[6] Pl's Ex. 7.

4

(ii)    Defendant's actions at issue took place outside of Florida's territorial jurisdiction. Florida statutory law does not provide a remedy for acts in waters outside the state's territorial jurisdiction.

(iii)    Even if a Bankruptcy Code or Florida statutory remedy were available to Plaintiff, Plaintiff is not entitled to judgment because failed to establish it suffered damages as a result of Defendant's actions.

## CONCLUSIONS OF LAW

Plaintiff's Amended Complaint contains two counts: (i) Count I seeks turnover of $55,000.00, plus interest and Court costs, from Defendant; and (ii) Count II alleges Defendant committed civil theft of $80,000.00 pursuant to Florida Statutes Section 772.11 and seeks three times the amount due as damages, prejudgment interest, attorney's fees, and costs.[7]

### *Count I*

The Amended Complaint does not set forth a legal basis for Count I. Plaintiff stated in open Court Count I is based upon 11 U.S.C. Section 542. Section 542 provides, in part:

> (a)  Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

> (b)  Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

---

[7] Doc. No. 11 at 4-5.

11 U.S.C. §§ 542 (a), 542(b).

Turnover pursuant to 11 U.S.C. Section 542 is an appropriate cause of action only where title to the tangible property or money due is not in dispute. <u>Charter Crude Oil Co.</u> <u>v. Exxon Co., U.S.A.</u> <u>(In re Charter Co.)</u>, 913 F.2d 1575, 1579 (11th Cir. 1990). "Instead, Section 542 allows trustees and debtors in possession to recover property that is clearly property of the debtor." <u>In re Ven-Mar Int'l, Inc.</u>, 166 B.R. 191, 193 (Bankr. S.D. Fla. 1994). "[T]he purpose of the turnover provision is to provide debtors with the ability to recover property, not the ability to recover property which *may be owed* to debtors." <u>In re Olympia Holding Corp.</u>, 221 B.R. 995, 998 (Bankr. M.D. Fla. 1998).

Plaintiff failed to explain whether its turnover count is based upon 11 U.S.C. Section 542(a) or Section 542(b)—whether the funds sought from Defendant are property of the bankruptcy estate or whether Defendant's agreement to pay Plaintiff $70,000.00 constitutes a matured debt Plaintiff is attempting to collect. Neither subsection (a) nor subsection (b) of 11 U.S.C. Section 542 provides an available remedy to Plaintiff because title to the funds and obligation to pay are in dispute.

***Section 542(a):*** Plaintiff relies on the ship's records for its allegation it suffered damages of $86,000.00 through Defendant's use of the gambling cards. Plaintiff apparently contends the $86,000.00 constitutes property of the bankruptcy estate pursuant to 11 U.S.C. Section 541(a) and is subject to turnover pursuant to 11 U.S.C. Section 542(a). The ship's records do not establish what funds of the Plaintiff's, if any, Defendant obtained through his use of the gambling cards. There were hundreds of transactions on the cards with money flowing off and onto the cards. Some of the funds

were Defendant's winnings and cash infusions.   Defendant disputes he is liable to Plaintiff for $86,000.00.

Plaintiff has failed to identify property in Defendant's possession that is clearly property of the Debtor.   No action for turnover exists pursuant to 11 U.S.C. Section 542(a).  In re Ven-Mar Int'l, Inc., 166 B.R. at 193.

*Section 542(b):*  Defendant disputes the enforceability of the note he signed promising to pay $70,000.00 to Plaintiff because it was the product of extortion and lacked consideration.  Defendant asserts if he owes any debt to Plaintiff such debt is only $15,000.00 and has been fully satisfied by his payment of $15,000.00 and tendering of his car title to Plaintiff on April 28, 2009.  Whether Defendant owes any debt to Plaintiff is in dispute.

Plaintiff has failed to establish Defendant owes an undisputed debt to Plaintiff that constitutes property of the bankruptcy estate.  No action for turnover exists pursuant to 11 U.S.C. Section 542(b).  Id.  Judgment is due to be entered in favor of Defendant and against Plaintiff on Count I pursuant to 11 U.S.C. Sections 542(a) and 542(b).

### Count II

Plaintiff asserts in Count II Defendant committed civil theft pursuant to Fla. Stat. Section 772.11 by using the gambling cards knowing he was not entitled to credits of $99,999,999.99.   Plaintiff seeks an award of treble damages, prejudgment interest, attorney's fees, and costs.  Plaintiff neither pled in its Amended Complaint nor presented at trial any other statutory law relating to its Count II allegations.

Fla. Stat. Section 772.11 is not a stand-alone statutory provision.  It provides for an award of civil damages where a plaintiff first establishes, by clear and convincing

evidence, he has been injured by a violation of certain provisions of Chapter 812 of the

Florida Statutes, which pertain to theft, robbery, and related crimes, and exploitation of

an elderly person or disabled adult.  Section 772.11 provides:

> Any person who *proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1)* has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

FLA. STAT. § 772.11 (*emphasis added*).

The provision of Chapter 12 Plaintiff apparently relies on is Fla. Stat. Section

812.014(1) which defines theft for purposes of Fla. Stat. Section 772.11 as:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

FLA. STAT. § 812.014(1).[8]  Establishing all of the elements of Section 812.014(1),

including "felonious intent," for a finding of civil theft is a fundamental predicate to an

award of damages pursuant to Section 772.11.  In re Caribbean K Line, Ltd., 288 B.R.

908, 922 (S.D. Fla. 2002).

The Florida civil theft statutory scheme does not provide an available remedy to

Plaintiff because Defendant's alleged theft occurred while Plaintiff's ship was outside of

Florida's territorial waters.  Florida's eastern seaward boundary extends three miles

---

[8] Plaintiff sent a demand letter to Defendant on November 3, 2009 (Doc. No. 11, Ex. 1) asserting $70,000.00 was misappropriated and citing Fla. Stat. Sections 772.11 and 812.014(1).

offshore pursuant to the Florida Constitution. FLA. CONST. art. II, § 1 (2002). Florida statutory law is inapplicable. *See* Florida Dep't of Revenue v. New Sea Escape Cruises, Ltd., 894 So. 2d 954, 962 (Fla. 2005) (explaining gambling cruises-to-nowhere that travel over three miles from shore leave the state of Florida during their voyages).

Florida law does not apply to theft on vessels outside of Florida's territorial waters; federal maritime law does. The United States Code defines a federal crime of larceny within the special maritime and territorial jurisdiction of the United States.[9] "Whoever . . . takes and carries away, with intent to steal or purloin, any personal property of another shall be punished . . . ." 18 U.S.C. § 661. If the property taken is of a value exceeding $1,000.00, the punishment is a fine, or imprisonment for not more than five years, or both. Id.

The Florida civil theft statutory scheme is inconsistent with federal law and, therefore, preempted. Fla. Stat. Section 812.014(1) defines theft more broadly than the crime defined in 18 U.S.C. Section 661; the Florida statute makes punishable not only a taking but also knowing usage or attempts to use the property of another with intent to either, temporarily or permanently, deprive the other person of a right or benefit of the property or appropriate the property to his own use. FLA. STAT. § 812.014(1).

Defendant would be subjected to additional punishments inconsistent with maritime law, including treble damages and payment of attorney's fees and costs if Fla.

---

[9] "Special maritime and territorial jurisdiction of the United States" includes "The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State." 18 U.S.C. § 7.

Stat. Section 772.11 were applied.  *See* GE Seaco Servs. v. Interline Connection, N.V., 2011 WL 98406 at *5 (S.D. Fla. Jan. 12, 2011) (holding the attorney's fees and treble damages provisions of Section 772.11 are incompatible with maritime law).

Florida's civil theft statutory scheme does not provide a remedy for acts that occur outside Florida's territorial waters.  Judgment is due to be entered in favor of Defendant on Count II.

*Damages*

Defendant would be entitled to judgment on Counts I and II even if causes of action for turnover and/or civil theft were available causes of action to Plaintiff.  Plaintiff failed to establish the amount of money, if any, it is owed by Defendant.  Plaintiff did not establish Defendant has property of the Debtor or owes a matured debt to the Debtor pursuant to 11 U.S.C. Sections 542(a) and 542(b).  Plaintiff did not establish "actual damages sustained," which is the basis for any treble damages award pursuant to Fla. Stat. Section 772.11.

Judgment is due to be entered in favor of Defendant and against Plaintiff.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the relief sought in Plaintiff's Amended Complaint (Doc. No. 11) is hereby **DENIED**.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this __6th__ day of April, 2011.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge